IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,            3:12-cv-01624-MA

        Plaintiff,            OPINION AND ORDER

   v.

$6,600.00 IN UNITED STATES
CURRENCY, *in rem*,

        Defendant.

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ANNEMARIE SGARLATA
Assistant United States Attorney
1000 Southwest Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Plaintiff

BRIAN L. MICHAELS
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401

    Attorney for Claimant Sean Beeman

MARSH, Judge

    In this civil forfeiture proceeding, claimant Sean Beeman moves to suppress all evidence obtained from a parcel delivered to

1 - OPINION AND ORDER

claimant's home, including the defendant currency. For the reasons set forth below, claimant's motion is denied.

## FACTUAL BACKGROUND

The material facts are undisputed.[1] On March 13, 2012, Postal Inspector Scott Helton intercepted a U.S. Mail express parcel addressed to claimant at the Portland Air Cargo Center in Portland, Oregon. An inquiry of a law enforcement database revealed that the name of the sender, "Tyson Shatswell," was not associated with the listed return address. Inspector Helton sought the assistance of Nikko, a certified controlled substance detection dog, and Officer Scott C. Groshong, Nikko's certified handler. Outside of Officer Groshong and Nikko's presence, Inspector Helton arranged the parcel in a deployment line along with five similar control parcels. Upon examining the deployment line, Nikko alerted on the subject parcel in the manner he has been trained to do when he detects the odor of a controlled substance. Nikko did not alert to any other parcel in the deployment line.

The next day, Inspector Helton, along with other officers in the Interagency Narcotics Enforcement Team (INET) went to the address of the intended recipient of the parcel in Eugene, Oregon at approximately 3:45 in the afternoon. Before going to the

---

[1] Because the facts are undisputed, this motion is appropriate for resolution without an evidentiary hearing. United States v. Quoc Viet Hoang, 486 F.3d 1156, 1163 (9th Cir. 2007).

2 - OPINION AND ORDER

residence, INET Detective Jacob Luquin inquired with the Oregon Medical Marijuana Program (OMMP) at 11:40 that morning to determine whether claimant was registered with OMMP. At 12:00, the OMMP responded that claimant was registered as a patient, as well as a caregiver for 15 other patients, of whom claimant was listed a grower for four. Inspector Helton did not recall specifically asking Det. Luquin to make the inquiry with OMMP, but it was information he found relevant to his investigation of the parcel.

Upon arriving at the recipient address listed on the parcel, Det. Luquin and Inspector Helton contacted claimant outside the residence. Claimant stated that the express mail parcel contained $9,000 in cash that was payment of a loan from a friend. Det. Luquin asked if they could speak in private and began walking toward the front door, but claimant insisted on speaking outside. Det. Luquin asked claimant to whom he had loaned the money and for what purpose, but claimant refused to answer.

When Det. Luquin asked if he could open the parcel, claimant unsuccessfully tried to grab it from him. Claimant asked the officers if he needed an attorney, at which point Det. Luquin advised claimant of his _Miranda_ rights, informed him that he was not under arrest, and said that he had a right to contact an attorney if he desired to do so. At that point, claimant called his attorney on his cellular telephone and granted consent to open the parcel.

3 - OPINION AND ORDER

The parcel contained two white envelopes. The first envelope had "DJ Pay 3500" written on the outside and contained $3,500 in cash. The second envelope had "TS" written on the outside, and contained $3,100 in cash and a note that read "Tyson 3100." Together, the currency found in the parcel constitutes the $6,600 in currency at issue in this proceeding. When asked, claimant reported that "Ty" sent him the money in repayment of a loan claimant had given him to assist his return to Oklahoma after Ty visited claimant in Eugene to help with claimant's marijuana grow. Claimant said that Ty used the $9,000 loan to purchase a car in Eugene and drive it back to Oklahoma.

Claimant again declined the officers' request to talk and count the money inside. While standing outside, Det. Luquin smelled fresh marijuana. Claimant told the officers that he is a medical marijuana patient, a grower for four patients, and a caregiver for a "whole bunch," and had some marijuana plants drying inside the house.

While claimant spoke to counsel, Det. Luquin and another officer counted the money. At some point in the conversation, and apparently contrary to his prior statement, claimant told the officers that he was not consenting to their opening the parcel or counting the cash.[2] Claimant asked what was going to happen to the

---

[2] Claimant now concedes he consented to the opening of the parcel. Mem. in Supp. of Mot. to Suppress (#21) at 7, 10.

money, and asked the officers to speak with his attorney. The officers informed claimant that they were under no obligation to speak with his attorney, but did so in any event. Inspector Helton informed claimant's attorney that the money would be submitted for civil forfeiture. Claimant told Inspector Helton that he had a "closed mind" regarding the medical benefits of marijuana.

Det. Luquin asked claimant for consent to search his residence, but claimant declined. After Det. Luquin advised claimant of his intention to apply for a search warrant for the residence, claimant said he would rather discuss a consent search. Det. Luquin asked claimant to speak with his attorney again before agreeing to a consent search. After claimant spoke with counsel, claimant and the officers agreed that the duration of any search would be limited to 30 minutes, and the scope would be limited to evidence of unlawful manufacturing or delivery of marijuana and money laundering. As claimant was reading the form, he commented about being coerced into allowing the search. Det. Luquin stopped claimant from signing the form unless his consent was voluntary. Claimant confirmed that he was consenting to the search voluntarily, and signed the consent form with the stipulations.

To determine the amount of marijuana claimant was permitted to possess, the officers verified the extent of claimant's registration with OMMP. The search of claimant's home revealed a marijuana grow that was compliant with claimant's OMMP limits.

5 - OPINION AND ORDER

Officers did not seize any evidence from the house and concluded the search within the agreed time period.

### DISCUSSION

Claimant argues the defendant currency should be suppressed for three reasons. First, claimant argues that the officers' initial inquiry into OMMP records violated his Fourth Amendment rights. Second, claimant asserts that his consent to open the parcel was involuntary. Finally, claimant maintains that the seizure of the defendant currency after the interaction at his home was not supported by probable cause.

### I. OMMP Records Inquiry

Claimant moves to suppress "all evidence related to and contained in the package carrying [the] defendant currency" on the basis that the initial inquiry into OMMP records revealing his participation was an unlawful search. Even assuming the initial OMMP inquiry violated Oregon law, and further assuming that claimant has a reasonable expectation of privacy in OMMP records, the OMMP inquiry would not justify suppression of any of the evidence stemming from the officers' contact with claimant at his home.

Consent to search "is tainted where the evidence indicates that it stemmed from the prior illegal Government action." United States v. Oaxaca, 233 F.3d 1154, 1158 (9th Cir. 2000). Suppression of evidence "is not justified unless 'the challenged evidence is in

6 - OPINION AND ORDER

some sense the product of the illegal governmental activity.'" Segura v. United States, 468 U.S. 796, 815 (1984) (quoting United States v. Crews, 445 U.S. 463, 471 (1980)). Thus, "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." Id.; see also United States v. Pulliam, 405 F.3d 782, 785-87 (9th Cir. 2005).

Here, there is no evidence the OMMP inquiry was even a "but for" cause of obtaining plaintiff's consent to open the parcel. Probable cause was not required for the brief seizure of the parcel for the purpose of deploying a narcotics detection canine. Quoc Viet Hoang, 486 F.3d at 1162. Once Nikko alerted to the parcel in the deployment line, probable cause supported the further seizure of the parcel based on (1) Nikko's alert; (2) the apparent mismatch between the name "Tyson Shatswell" and the listed return address; and (3) the sender's use of express mail, which Inspector Helton knew to be a common method of shipment in narcotics transactions. Declaration of Scott Helton at 3; see Quoc Viet Hoang, 486 F.3d at 1158-59, 1162.

With the properly seized parcel in hand, the officers traveled to claimant's home. There is no evidence that the officers' knowledge of claimant's OMMP participation in any way affected the course of the interaction that led to claimant granting consent to open the package. Indeed, claimant does not dispute that he was the first to mention his OMMP participation in his interaction with

7 - OPINION AND ORDER

the officers. Thus, claimant's consent to open the parcel was not related to the OMMP inquiry that claimant alleges violated his Fourth Amendment rights, and his consent therefore cannot be tainted because it did not stem from any prior illegal government action. See Oaxaca, 233 F.3d at 1158.

## II. Voluntariness of Consent

Claimant briefly argues that his consent to open the parcel was not voluntary. "Whether consent to search was voluntarily given is 'to be determined from the totality of all the circumstances.'" United States v. Patayan Soriano, 361 F.3d 494, 501 (9th Cir. 2004) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). The court considers five factors in determining the voluntariness of consent to search: "'(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that [he] had the right not to consent; and (5) whether the defendant had been told a search warrant could be obtained.'" Patayan Soriano, 361 F.3d at 502 (quoting United States v. Jones, 286 F.3d 1146, 1152 (9th Cir. 2002)). No single factor is determinative, as they "are only guideposts, not a mechanized formula to resolve the voluntariness inquiry." Id.

Claimant argues that the officers' allegedly unlawful OMMP inquiry and the officers' seizure of the parcel rendered his consent involuntary. This argument is without merit. As discussed

8 - OPINION AND ORDER

above, there is no evidence that the officers' knowledge of claimant's participation in OMMP led to claimant's consent to open the parcel. Moreover, the officers' mere possession of the parcel pursuant to a seizure supported by probable cause does not amount to "coercion" sufficient to render consent involuntary.

Application of the five factors makes clear that claimant's consent was voluntary. As the officers informed him shortly before claimant granted consent, claimant was not in custody. The officers did not have their guns drawn and were not physically intimidating claimant in any way. Despite being assured he was not in custody, the officers took the additional step of informing claimant of his Miranda rights. Claimant was not notified of his right to withhold consent, but the officers did assure him that he was welcome to call his attorney and informed him of his Miranda rights. With respect to opening the parcel, claimant was not told in a threatening manner that a search warrant could be obtained. See Patayan Soriano, 361 F.3d at 504-05. Thus, the application of the factors militates strongly toward finding that consent was voluntary. The mere fact of the officers' seizure of the parcel does not overcome the strong indicia throughout the encounter that claimant's consent was freely given.

### III. Probable Cause to Seize the Defendant Currency

Finally, claimant argues that the officers lacked probable cause to seize the defendant currency after the parcel had been

9 - OPINION AND ORDER

opened and his home searched. I disagree. The following facts known to the officers at the end of the interaction at claimant's home establish that "the facts available to [them] would 'warrant a person of reasonable caution in the belief'" that the defendant currency represented the proceeds of an illegal narcotics transaction. Florida v. Harris, ___ U.S. ___, 133 S.Ct. 1050, 1055 (2013) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). A law enforcement database indicated the name listed with the return address on the parcel was not associated with that address. A narcotics detection canine alerted to the odor of narcotics emanating from the parcel.[3] The parcel contained a large amount of currency. Claimant's explanation that the currency was $9,000 in repayment of a loan to "Ty" was inconsistent with the parcel containing $6,600 in payment from what appeared to be two different people. Claimant had access to saleable quantities of marijuana through his participation in OMMP.[4] The parcel originated from out of state, where OMMP does not apply. Finally,

---

[3] Claimant's argument that Nikko's alert does not contribute to a finding of probable cause is meritless. Claimant does not dispute that Nikko is properly trained and certified. See Pl.'s Resp. to Claimant's Mot. to Suppress (#27) exh. B. The alert of a certified narcotics detection canine supports a finding of probable cause. Harris, 133 S.Ct. at 1055-58.

[4] Claimant neither disputes that he informed the officers of his participation in OMMP, nor argues that the later inquiry of OMMP records was illegal.

claimant had marijuana at his home, albeit in a quantity compliant with OMMP regulations.

These facts, along with the officers' knowledge based on their training and experience, are sufficient to establish "the kind of 'fair probability'" that the defendant currency constituted proceeds of an illegal drug transaction "on which 'reasonable and prudent [people,] not legal technicians, act.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)) (alteration in original). The seizure of the defendant currency after the interaction at claimant's home was supported by probable cause.

## CONCLUSION

For the foregoing reasons, claimant's Motion to Suppress (#20, #23) is DENIED.

IT IS SO ORDERED.

DATED this 4 day of December, 2013.

Malcolm F. Marsh
United States District Judge

11 - OPINION AND ORDER